### In re ANSON MERCANTILE CO.

(District Court, N. D. Texas. May 5, 1911.)

1. BANKRUPTCY (§ 165*)—CONDITIONAL SALE—CONTRACT—"TRANSFER"—"PREFERENCE."

Rev. St. Tex. 1895, art. 3327, provides that all reservations of title to or property in chattels as security for the purchase money thereof shall be held to be chattel mortgages, and, when possession is delivered to the vendee, shall be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. *Held* that, since a reservation of title to chattels in the

seller confers on the buyer a mere equity of redemption, such transaction, as between the seller and the buyer, who subsequently becomes a bankrupt, does not constitute either a transfer or preference within Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*

For other definitions, see Words and Phrases, vol. 6, pp. 5498–5499; vol. 8, pp. 7759, 7064–7070.]

2. BANKRUPTCY (§ 140*)—CONDITIONAL SALE—CONTRACT—REGISTRATION—TIME—"CREDITORS."

The word "creditors," as used in Rev. St. Tex. 1895, art. 3327, providing that reservations of title to or property in chattels as security for the purchase money shall be void as to creditors, unless registered as a chattel mortgage, having been defined to mean only persons whose claims have been fixed by some legal procedure as liens on the property, a trustee in bankruptcy of a buyer under a conditional sale contract does not become a creditor with a lien on the property in possession of the bankrupt until adjudication under Act Cong. June 25, 1910, c. 412, 36 Stat. 838 (U. S. Comp. St. Supp. 1911, p. 1491), conferring on trustees the rights of creditors holding a lien, and hence, where the contract of conditional sale was duly registered before adjudication, it was valid as against the buyer's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 221, 225; Dec. Dig. § 140.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623.]

In Bankruptcy. In the matter of the Anson Mercantile Company. On certificate of referee to review an order allowing a claim of the John Deere Plow Company to the proceeds of certain property sold to the bankrupt under a conditional sale contract. Affirmed.

See, also, 185 Fed. 993.

Etheridge & McCormick, of Dallas, Tex., for claimant.

MEEK, District Judge. The trustee of the bankruptcy estate of Anson Mercantile Company (hereinafter called mercantile company or bankrupt), feeling aggrieved at the action of K. K. Legett, Esquire, the referee, in allowing the claim of John Deere Plow Company (hereinafter called plow company), has brought the matter before me on certificate for review.

The issues arising upon the contest of the claim of the plow company were submitted to the referee on an agreed statement of facts, the substance of which is, in part, as follows:

It is admitted: That at the time the alleged orders for goods were made by the mercantile company, and at the time they were received and filed by the plow company, the mercantile company was engaged in the grocery, hardware, and implement business at Anson, Jones county, Tex., and was so engaged at the time the alleged orders were filed for record in the office of the county clerk of Jones county as chattel mortgages. That during all of this time the mercantile company was pursuing the avocation of a merchant, and had a stock of goods which was duly exposed for sale at retail in the regular course

of business. That at the time of the ordering and shipment of these goods it was understood and contemplated by and between the parties that the mercantile company, upon receipt of same, should place them in the stock and remain in continuous possession and actual control of them, and such goods so sold and delivered would be by the mercantile company duly exposed to sale in the regular course of business. That this was the course in fact pursued. That the contracts of sale containing the clause as to retention of title in the plow company were not filed in Anson, Jones county, Tex., where the goods were then located, until December 5, 1910, one day prior to the filing of the voluntary petition in bankruptcy. That the trustee and other general creditors shown in the bankruptcy schedules filed herein had no knowledge of the existence of the said alleged chattel mortgage contracts until they were filed. That said goods so sold and delivered by the proponents to the bankrupt were sold and delivered to the bankrupt prior to December 5, 1910. That no additional goods were sold to the bankrupt at the time the mortgage was filed for record, and no new consideration was passed between the proponent and the bankrupt at the date of the filing of the mortgages. That at the time the alleged contracts or mortgages were filed the mercantile company was insolvent, as insolvency is defined in the National Bankruptcy Act now in effect, and at such time it was indebteded to the Walker-Smith Grocery Company and to many others, as shown by its schedules in bankruptcy, here referred to and made a part hereof. That the goods were in the hands of the bankrupt at the time of the filing of the petition and adjudication, and came into the possession of the trustee by virtue of his appointment. That subsequently, under the order of this court, they were sold separately and brought $510, which sum is now in the hands of the trustee as a special deposit to await the decision of the court on this claim. That at the time the plow company filed its contracts of mortgage for record in Jones county it then knew the mercantile company was insolvent, as insolvency is defined by the Bankruptcy Act. That the mercantile company had not complied with the conditions in the order for goods, which required it to turn over to the plow company the money received for goods sold and delivered under the contract, or to turn over to the plow company notes which might be received in settlement for goods that had been purchased under and by virtue of written orders.

It is agreed that the contracts and each of them mentioned in the claim contains the following language:

"(3) To look to transportation companies for all losses occasioned by damage in transit or failure to deliver any goods in good order.

* * * * * * * * * *

"(7) It is also agreed that the title to, and ownership of, and the right to immediate and exclusive possession, upon demand either oral or written to all goods which may be shipped as herein provided, or during the current season, shall remain in, and their proceeds in case of sale shall be the property of, John Deere Plow Company and subject to its order until full payment shall have been made for the same by the undersigned in money; but nothing in this clause will release the undersigned from making payment as herein agreed."

It is further agreed that the amount of the indebtedness due at the time of adjudication of the bankrupt to the plow company was $3,-853.64, and that same was for goods furnished under said contract.

In addition to the agreed statement of facts as above set forth, the referee made the following finding:

"That the effect of the enforcement of the claim of the plow company, and setting aside to it of the $510, the proceeds of the goods as set out and described in its claim presented in this clause, will have the effect of giving said plow company a greater percentage of its debt than the estate will pay to general creditors of the mercantile company."

Under the above findings, the referee allowed the claim of the plow company as a secured claim to the extent of the value of the property covered by its liens which had theretofore been liquidated at the sum of $510, and directed the trustee to pay claimant this amount as a credit on its claim, and ordered that the balance of said claim amounting to $3,853.64 be allowed as an unsecured claim to be paid in due course of administration.

The questions presented on this review are as follows:

(1) Will the enforcement of the contract of the plow company involve and create a preferential transfer within the inhibition of Bankr. Act, § 60, subdiv. "b" thereof?

(2) Is the instrument evidencing claimant's lien void because not filed for more than a year after it was taken, and no new consideration passing between the parties as of the date same was filed for record in Jones county, Tex. In other words, is the instrument void under section 67, subdiv. "d," thereof?

(3) Is the instrument evidencing the claimant's lien void as to the trustee in bankruptcy under section 47, subdiv. "a" (2), of the Bankruptcy Act, as amended in the year 1910?

[1, 2] The referee filed and transmits as a part of his certificate in this matter his opinion, from which I quote at length, as follows:

"The questions of law were argued before me, and those principally urged and relied on by the trustee were:

"(1) That the transaction between the bankrupt and the claimant involved preferential transfer in the nature of a lien which had not been recorded more than four months before the bankruptcy proceeding was instituted, and therefore was voidable by the trustee.

"(2) That the instrument evidencing the claimant's lien is void because the delay in registering it left the lien for some time after the goods covered by it had been delivered to the bankrupt subject to the attack of legal lien creditors, into which class the trustee in bankruptcy is introduced by the recent amendment to the bankrupt law.

"Considering these questions in the order in which they are stated:

"It is observed that the transaction between the claimant and the bankrupt is of the character treated in the legislation of Texas under the designation, 'Reservations of the title to or property in chattels as security for the purchase money thereof.' The legal effect of such instruments as between the parties and as to creditors is declared in article 3327 of the Revised Statutes of Texas (1895), which reads as follows: 'All reservations of title to or property in chattels as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages; provided, that nothing in this law shall be construed to contravene the Landlord and Tenant Act.' Construing this statute, the Supreme Court of Texas, in the lead-

ing case on the subject, says of the transaction involved: 'It is a reservation by the vendor, and not any form of lien attempted to be given by the owner.' Bowen v. Wagon Works, 91 Tex. 390, 43 S. W. 874. Indeed, this would clearly seem to be so and to exclude the idea of a transfer, because the effect of the reservation of title is not to enforce the lien upon something which the bankrupt then had, but rather to clothe him with the equity of redemption only in property which theretofore had been wholly owned by another.

"I cannot find in the transaction the essence of a depletion of the bankrupt's estate by taking therefrom in the form of payment or security something which at the time of the transaction constituted a fund for the payment of creditors. My conclusion on this point, therefore, is that the transaction involved between the claimant and the bankrupt was not a transfer nor a preference.

"Coming to the second question: It must be observed at the threshold that the effect of registration or its absence is left by the bankrupt law to be determined by the local state jurisprudence. The statute covering the record of such instruments has been set out above and uses the familiar words 'creditors' and 'bona fide purchasers' as to those protected by the registration.

"No question can arise here as to a bona fide purchaser, but the trustee insists that he is made by the recent bankruptcy legislation a 'creditor' as that term is used in the registration acts. In the Bowen Case, supra, the Supreme Court of Texas, discussing the meaning of the word 'creditors' in the registration act, says: '"Creditors," as here used, has been generally held to mean persons whose claims have been fixed by some legal procedure as liens upon property.' Numerous other decisions from the appellate courts of this state are to the same effect, and there are no conflicting decisions; so that it may and must be assumed that failure to register a reservation of title contract leaves it subject to attack only by those creditors, if any, who have fixed liens upon the property by some legal process levied before the registration. The recent amendment to the Bankruptcy Act provides: 'Trustees, as to all property in the custody or coming into the custody of the bankrupt court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon.' Section 47, cl. (2), of subdivision 'a,' as amended by Act June 25, 1910.

"The question arises as of what date the trustee should be deemed vested with these rights? There must be some point of time before which the rights did not accrue, and after which they are vested. There are obvious considerations tending to the conclusion that the intent was to vest these rights as of date of the adjudication; for it may be seen that many petitions for involuntary bankruptcy are filed which are defeated and dismissed without an adjudication, and in such cases it would seem burdensome that the mere filing of a petition in bankruptcy, however unfounded the ground on which the proceeding may prove to be, should operate as a levy of legal process on all of the property of the person so proceeded against. On the other hand, there are considerations leading to the conclusion that the intent was that the filing of a petition should constitute the equivalent of a levy, and vest in the trustee to be subsequently appointed after and when he was appointed the right of a legal lien by relating back as of date on which the petition was filed. In this case, however, it is not necessary to determine whether the rights of the trustee are to be considered as having become vested on the date of the adjudication or on the date of the institution of the proceedings, for the facts in this case show that the instruments evidencing claimant's liens had been duly filed before either of these dates.

"The question then occurs: Can these rights of the trustee be considered as having antedated the institution of the bankruptcy proceedings? I can find no reason for so holding. I can find no point of time prior to the institution of the bankruptcy proceedings which would determine the validity of such instruments by validating those filed prior to that time and invalidating those which should be subsequently filed, and to fix a date prior to the institution of the bankruptcy proceedings would be in effect to hold that such instruments were void for want of record as against the trustee in bankruptcy

if not at once recorded, and such a holding would, in my opinion, fail to reflect the meaning of that portion of the bankrupt law quoted supra, and conflict with the decisions of the Supreme Court of Texas on the meaning of the Registration Acts. I therefore find that the contracts of the claimant were duly filed, and are not subject to the attack of the trustee for want of record. The effect of a failure to register such contracts before the institution of bankruptcy proceedings is not a question involved in this contest."

I adopt the referee's reasoning and the conclusions reached by him. The order complained of and heretofore entered by him on the 11th day of April, 1911, is hereby approved and affirmed.

The costs of this certificate will be taxed against the estate of the bankrupt as costs of administration.